UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL A. HARY,<br>    Plaintiff, | :<br>: |
| | : CIVIL ACTION NO. |
| v. | : 3:08-cv-1611 (JCH) |
| | : |
| JOSEPH P. DOLAN,<br>    Defendant. | : JANUARY 28, 2010<br>: |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (Doc. No. 31)**

**I.    INTRODUCTION**

On October 21, 2008, plaintiff Rachel A. Hary ("Hary") brought this action against defendant Joseph T. Dolan ("Dolan"), asserting federal claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 ("section 1983"), and a state law claim for intentional infliction of emotional distress.  Hary, a Connecticut resident, was involved in a car accident in Norwich, Connecticut, on October 17, 2007.  Hary's Complaint alleges that Dolan, a police officer in the Norwich Police Department who investigated the accident, arrested her without probable cause, subjected her to "vile profanities and verbal abuse," and "maliciously wrote a false police report."  Complaint at ¶¶ 7-9.

Dolan moved the court for summary judgment on October 29, 2009 (Doc. No. 31).  Hary filed a Memorandum in Opposition on November 20, 2009 (Doc. No. 32).  Dolan filed a Reply Memorandum on December 1, 2009 (Doc. No. 33).  For the reasons contained herein, the court grants Dolan's Motion for Summary Judgment.

**II.    FACTUAL BACKGROUND**

In the early afternoon of October 17, 2007, Dolan was dispatched to the scene of

1

a car accident near the intersection of the Salem Turnpike and Wawecus Hill Road in Norwich, Connecticut.  L. R. 56(a)(1) at ¶ 2.  When he arrived, he observed a collision that had taken place in the westbound lane of the Salem Turnpike, near the entrance to a parking lot at 113 Salem Turnpike, which is known as Salem Plaza (hereinafter "Salem Plaza parking lot").  Id. at ¶ 3.  Dolan learned that the parties to the accident were Hary and George Krawczynski ("Krawczynski"). Id. at ¶ 5.

At the time of the accident, Hary was a high school student who had been "dismissed early from school" and was on her way to at Workout World, a business located in Salem Plaza.  Id. at ¶ 15.  Eight days earlier, Hary had been first issued her driver's license.  Id. at ¶ 16; see also Def's Exh. D.  Hary and Krawczynski collided when Hary attempted to make a left turn from the eastbound lane of the Salem Turnpike into the Salem Plaza parking lot.  Id. at ¶ 5.  At the time, Krawczynski was traveling in the westbound lane of the Salem Turnpike.  Id.  When Dolan arrived, he spoke to Hary and Krawczynski, neither of whom accepted fault for the accident. Hary told Dolan that, at the time she attempted to turn into the Salem Plaza parking lot, the traffic light at the intersection displayed a green left-hand arrow.  Id. at ¶ 6. Krawczynski told Dolan that, at the time he entered the intersection, the light facing the westbound lane was solid green.  Id. at ¶ 7.

Dolan, in addition to speaking to Hary and Krawczynski, interviewed two eyewitnesses to the accident, Heidi Fitzgerald ("Fitzgerald") and Mark Wayne Derby ("Derby").  Id. at ¶ 8, 10.  Fitzgerald told Dolan that she had turned before Hary from the eastbound lane of the Salem Turnpike into the Salem Plaza parking lot.  Id. at ¶ 9. While Fitzgerald told Dolan that she had a left-hand green arrow when she made the

turn, she indicated that she did not know whether the light displayed a left-hand green arrow at the time Hary turned.  Id.  Derby told Dolan that, at the time of the accident, he was traveling behind Krawczynski in the westbound lane on the Salem Turnpike.  Id. at ¶ 10.  Derby stated that the light facing the westbound lane turned yellow "[a]s Mr. Krawczynski entered the intersection."  Id.

Approximately fifteen to twenty minutes after the accident occurred, paramedics arrived and Hary was taken to the hospital.  Deposition of Rachel Hary at 68:11 (hereinafter "Hary Dep.").  Thereafter, based on his interviews, as well as an investigation into the traffic light pattern at the intersection where the collision occurred, Dolan concluded that Hary was at fault for the crash.  Id. at ¶ 14.  He consequently believed he had probable cause to issue Hary a ticket for a violation of Conn. Gen. Stat. § 14-242(e), because she failed to yield the right of way to Krawczynski when she attempted to turn into the Salem Plaza parking lot.  Id.  Dolan went from the accident scene to the hospital to issue Hary the ticket, but when he arrived, she had been discharged.  Id. at ¶ 17.  He then traveled to Hary's residence in Oakdale, Connecticut and issued her the ticket there.  Id. at ¶ 18.

Hary, who maintains that Krawczynski was at fault for the accident, contends that Dolan engaged in rude and abusive behavior towards her and various others.  She alleges that, when Dolan arrived to the scene of the accident, she "told [Dolan] what had happened to her, but [Dolan] walked away and began talking to the truck that hit her."  Plaintiff's Statement of Material Facts at ¶ 6.  Hary also alleges that Dolan "refused to take statements from witnesses and began swearing and yelling at them." Id. at ¶ 8.  Hary alleges that at least one of these witnesses was, at the time,

"attempt[ing] to explain . . . that [Hary] was not at fault in the accident." Id. at ¶ 9. Overall, Hary claims that Dolan "treated [her] far worse and far more harshly than the perpetrator." Id. at ¶ 12.

Hary claims that she suffered "serious physical injuries in the accident for which she has required ongoing medical treatment." Id. at ¶ 10. In addition, she alleges that, due to Dolan's "abuse," she has "suffered emotional distress, has been diagnosed as suffering post-traumatic stress disorder, and has obtained mental health therapy." Id. at ¶ 11.

## III.   STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their

4

responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.   DISCUSSION

### A.   False Arrest

"Section 1983 claims of deprivations of liberty related to criminal prosecutions implicate the Fourth Amendment right to be free of unreasonable seizure of the person." Burg v. Gosselin, __ F.3d __, 2010 WL 27314, at *1 (2d Cir. 2010). In considering a section 1983 claim for false arrest, the court looks "to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); see also Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007). Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." Green v. Donroe, 186 Conn. 265, 267 (1982). "In a false arrest action, Connecticut law places the burden of proving an unlawful arrest on the plaintiff." Russo, 479 F.3d at 203 (citations omitted).

The basis for Hary's allegation that Dolan unlawfully restrained her is nebulous. On one hand, the Complaint states that Dolan "arrested [Hary] without a warrant." Complaint at ¶ 6. On the other hand, Hary admits Dolan's assertion, which is contained in Dolan's Local Rule 56(a)(1) Statement, that Hary "was never taken into custody or arrested by officer Dolan." L.R. 56(a)(1) at ¶ 21; L.R. 56(a)(2) at ¶ 21; see also Hary Dep. at 40:14-22[1], 50:25, 69:21. Despite Hary's claim to the contrary, the police

---

[1] Q.   Were you ever taken into custody by Officer Dolan?
A.   No.
Q.   Were you taken to the police station?
A.   No.
Q.   Putting aside what you think the police report says, do you think you were ever arrested

accident report itself contains no suggestion that Hary was ever arrested.  See Def's Exh. B; Hary Dep. at 41:7-13.  Further, Hary's "Statement of Material Facts," which was filed with her Local Rule 56(a)(2) Statement, does not mention any conduct by Dolan that could be reasonably found by a jury as an unlawful restraint or arrest.  See L.R. 56(a)(2) at 2-4.

Hary appears to allege that she was falsely arrested when she was summoned to appear in court after Dolan issued her a ticket for violating Conn. Gen. Stat. § 14-242(e).  See Complaint at ¶ 10; Memorandum in Opposition to Motion for Summary Judgment at 3-4 ("The requirement that an accused person appear in court at a stated date and time is a sufficient restraint on liberty to support a claim for false arrest or malicious prosecution under the Fourth Amendment.").   If this summons provides the basis for her section 1983 false arrest claim, then that claim plainly fails under recent Second Circuit precedent.  See Burg, 2010 WL 27314, at *2.  In Burg, a canine control officer summoned the plaintiff to appear in court after receiving a complaint about the plaintiff's dog.  Id. at *1.  After the plaintiff did not appear as summoned, she was arrested and taken into custody.  Id.  The plaintiff sued the officer under section 1983, claiming that the officer's "issuance of the summons . . . constituted an unreasonable seizure in violation of the Fourth Amendment."  Id.  The Second Circuit affirmed the district court's ruling granting summary judgment to the defendant, holding that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  Id. at *2.

---

         by Officer Dolan?
A.    No.

In reaching this conclusion, the Circuit court noted that the summons imposed no "restriction on travel," required the plaintiff to appear in court only once, and was in relation to an "infraction," rather than a "serious criminal charge[]." Id. (citations and quotation marks omitted).

If Hary's section 1983 claim for false arrest is based on Dolan's issuance of a pre-arraignment, non-felony summons, then that claim fails under a straightforward application of Burg. Like the plaintiff at issue in Burg, Hary was charged with an "infraction" (rather than a serious crime), was never arraigned, and was never personally required to attend court. See Conn. Gen. Stat. § 14-242(g); Burg, 2010 WL 27314, at *2; see also Conn. Gen. Stat. § 51-164n(e) ("A summons for the commission of an infraction . . . shall not be deemed to be an arrest.").

Alternatively, it appears possible--though unlikely--that Hary alleges she was falsely arrested when Dolan made her "sit on [a] grassy area" near the intersection where collision occurred and wait to be taken to the hospital. Hary Dep. at 69:17-18, 40:23-41:2. The court stresses that, if Hary intends to allege that she was subject to false arrest because she was detained in the aforementioned "grassy area," such an allegation would sharply contradict her own deposition testimony that she was never subject to an arrest by Dolan. The court is further skeptical that this allegation is the basis for the false arrest claim, because Hary's Memorandum in Opposition to the Motion for Summary Judgment never states that Hary was physically confined by Dolan at any time.

However, even if the court construes the record extremely liberally and assumes that Hary wishes to pursue a section 1983 false arrest claim on the ground that she was

7

physically confined by Dolan in a "grassy area" while waiting for paramedics to arrive, that claim cannot survive summary judgment.  Under Connecticut law, "[t]o prevail on a claim of false imprisonment, the plaintiff must prove that . . . the restraint was against [her] will, that is, that [s]he did not consent to the restraint or acquiesce in it willingly." Lo Sacco v. Young, 20 Conn. App. 6, 19 (1989).  Here, the record contains no evidence upon which a jury could conclude that Hary did not consent or acquiesce to sitting in the "grassy area" and waiting for the ambulance that had been called for her following the accident.  To the contrary, Hary claims that she suffered a serious back injury in the collision, was transported to the hospital from the scene, and has sought continuing medical treatment as a result.  Hary Dep. at 51:6-11; Plaintiff's Statement of Material Facts at ¶ 10.

      B.    Malicious Prosecution

As with Hary's claim for false arrest, the court looks to state law in analyzing Hary's claim for malicious prosecution under section 1983. To establish a claim for malicious prosecution under Connecticut law, the plaintiff must show that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." Heussner v. Day, Berry and Howard, LLP, 94 Conn. App. 569, 577 (2006).  Dolan argues that summary judgment must be granted because, inter alia, Hary was charged only with an "infraction," and thus "criminal proceedings" were never initiated against her.

Hary's Memorandum in Opposition to the Motion for Summary Judgment does

not respond to Dolan's argument that no "criminal proceedings" were initiated against her.  However, as courts in this district have held, "[a]n infraction does not constitute the initiation of a 'criminal' proceeding within the context of a malicious prosecution claim." Libby v. Santangelo, 1998 WL 229917, at *3 (D. Conn. Mar. 31, 1998); see also Tombardi v. Quinones, 2000 WL 852431, at *6 (D. Conn. Mar. 31, 2000).  There is no question that the statute under which Hary was ticketed is an "infraction," Conn. Gen. Stat. §14-242(g), or that an "infraction" is not an "offense" under Connecticut law. Conn. Gen. Stat. § 51-164n(e).  There is thus no dispute of material fact as to whether Dolan "initiated or procured the institution of criminal proceedings against" Hary.  Summary judgment therefore must be granted on Hary's malicious prosecution claim.

In addition, the court notes that, " 'to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.' " Rolon v. Henneman, 517 F.3d 140, 147 (2d Cir. 2008) (quoting Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir.2004)).  Indeed, "[i]n order to allege a cause of action for malicious prosecution under § 1983, [the plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir.2000) (emphasis omitted).  In this case, as noted in the court's discussion of the false arrest claim, Hary has not alleged that she was subject to any "post-arraignment liberty restraint" whatsoever. Indeed, she was never arraigned.  Therefore, Hary's malicious prosecution claim would not survive summary judgment, even if this court

were to overlook the fact that "criminal proceedings" were never initiated against Hary.

    C.    <u>State Law Claims</u>

Taken together, Hary's deposition testimony, Statement of Material Facts, and Memorandum in Opposition to the Motion for Summary Judgment clearly indicate that the crux of Hary's claim in this case relates to Dolan's allegedly "abusive" and "rude" behavior at the scene of the accident. However, because the court has granted summary judgment to the defendants on Hary's federal claims, the court declines to exercise supplemental jurisdiction over Hary's remaining state law claim for intentional infliction of emotional distress. <u>See</u> 28 U.S.C. § 1367(c)(3).

**V.    CONCLUSION**

For the foregoing reasons, Dolan's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.

    **SO ORDERED**

Dated at Bridgeport, Connecticut this 28th day of January, 2010.

    /s/ Janet C. Hall
    Janet C. Hall
    United States District Judge